UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KENNETH DOST, *et al,*

                Plaintiffs,                3:11-cv-00270-ST

      v.                             FINDINGS AND
                                           RECOMMENDATIONS

NORTHWEST TRUSTEE SERVICES, INC., *et al,*

                Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Kenneth Dost, appearing *pro se* on behalf of himself and his wife, Michele

Dost, and his now defunct company, KWD Design, Inc. ("KWD"), filed this action on March 4,

2011, against a number of defendants for conspiring to ruin the national economy and the Dosts'

personal finances.  Those defendants are Northwest Trustee Services, Inc. ("NWTS"), Ownit

1 - FINDINGS AND RECOMMENDATIONS

Mortgage Solutions, Inc. ("Ownit") and its CEO, William David Dallas ("Dallas"),  Litton Loan

Servicing, LP ("Litton Loan Servicing") and its CEO, Larry Blake Litton, Jr. ("Litton"), Merrill

Lynch & Co. ("Merrill Lynch"), Goldman Sachs & Company ("Goldman Sachs"), Bank of

America Corporation ("BAC"), and Mortgage Electronic Registration Systems ("MERS").

On March 28, 2011, the Court advised Kenneth Dost,[1] who is not a lawyer, that he could

not represent his wife or KWD and that KWD could only appear through counsel (docket # 6).

Neither Michele Dost nor KWD have since filed separate appearances.  In late April and early

May 2011, all defendants except Dallas, Ownit, and MERS, filed motions to dismiss based on

lack of standing, failure to state a claim for relief, failure to comply with FRCP 8(a), and lack of

personal jurisdiction (dockets # 10 by NWTS, # 22 by BAC & Merrill Lynch, # 24 by Litton,

# 29 by Litton Loan Servicing & # 33 by Goldman Sachs & Co.).  On August 15, 2011, this court

granted leave to Dost to amend and, on September 2, 2011, he filed a First Amended Complaint

(docket # 100).  Shortly thereafter, MERS filed a motion to dismiss (docket # 107).  All motions

to dismiss are deemed directed towards the First Amended Complaint (docket # 101).

.                                                   **ALLEGATIONS**

The initial Complaint was 108 pages long and contained 351 paragraphs alleging facts,

legal conclusions, argument, and 12 claims for relief arising out of the threatened foreclosure of

the Dosts' property which secures their loan.  Most of the Complaint is a rambling invective

leveled against various aspects of the lending industry for causing the current financial crisis.

Amidst that tirade, the Dosts did allege some facts concerning their alleged injury.

---

[1]  Kenneth Dost will be referred to simply as "Dost."

On May 12, 2005, the Dosts signed a Note for $350,000 payable to Ownit secured by a Deed of Trust on property in Scappoose, Oregon. First Amended Complaint, ¶ 90. In August 2007, KWD (Dost's architectural and mechanical engineering business) suffered a loss of clients due to the freezing of credit markets and the halt in construction projects. Complaint, ¶¶ 170-73. The Dosts received an offer to refinance their loan on October 31, 2007, from Litton Loan Servicing, which they later rejected. *Id*, ¶ 174. After the Dosts defaulted on their loan, they were served with a foreclosure notice in June 2008. *Id*, ¶ 175.

In 2008, MERS, as the nominee for Ownit, assigned the Note and Deed of Trust to HSBC Bank. First Amended Complaint, ¶ 30. As can be gleaned from the factual allegations in the original Complaint, with the assistance of Neighborhood Assistance Corporation of America ("NACA"), the Dosts obtained a postponement of that sale and a new modification agreement from Litton Loan Servicing which they declined to accept. Complaint, ¶¶ 175-77. That sale was postponed, but a Trustee's Notice of Sale was issued December 30, 2009. *Id*, ¶ 53. To bar any foreclosure action and to recover damages in the form of interest payments, compensation for emotional damages and deferred maintenance and damage to their property, plaintiffs filed this case alleging claims for:

1. Intentional Negligence and Misrepresentation against Dallas, Litton and MERS;
2. Violation of the Fair Trade Communication Act against all defendants;
3. Violation of the Real Estate Mortgage Investment Conduit ("REMIC") against all defendants;
4. Breach of Good Faith and Fair Dealing against Dallas, Ownit and Litton Loan Servicing;
5. Breach of Contract against Ownit;
6. Aiding and Abetting against all defendants;
7. Violation of Oregon's RICO law, ORS 166.720, against all defendants;
8. Civil Conspiracy against all defendants;
9. Conspiracy to Commit Fraud and conversion against all defendants;

10.  Unjust Enrichment against all defendants;
11.  Successor and Vicarious Liability against BAC;
12.  Quiet Title against all defendants.

The First Amended Complaint is shorter (59 pages and 295 paragraphs), no longer names Michele Dost or KWD as plaintiffs, and eliminates the Second and Third claims for violation of the Fair Trade Communication Act and REMIC, as well as the Eleventh Claim for successor and vicarious liability.  However, it still has over 1,500 pages of exhibits and makes essentially the same allegations as the original Complaint, although repackaged and rearranged, and alleges the following 13 claims:

1.  Civil Aiding and Abetting against Merrill Lynch;[2]
2.  Conspiracy Aiding and Abetting against Litton Loan Servicing and Merrill Lynch;[3]
3.  Unjust Enrichment against Litton Loan Servicing, Merrill Lynch and Ownit;
4.  Violation of RICO, 18 USC §§ 1961(3) and 1964(c) against all defendants;
5.  RICO Conspiracy against all defendants;
6.  RICO Extortion against all defendants;
7.  Breach of Contract against Ownit;
8.  Breach of Duty of Loyalty against Ownit;
9.  Breach of Fiduciary Duty against Ownit;
10.  Common Law Fraud[4] – Concealment against all defendants;
11.  Constructive Fraud against all defendants;
12.  Intentional Misrepresentation and Conspiracy against all defendants;
13.  Quiet Title against all defendants.[5]

---

[2] Although the caption of the First Claim lists Litton Loan Servicing and Ownit, the allegations are alleged "against Merrill Lynch" and damages are sought only from Merrill Lynch.  First Amended Complaint, ¶¶ 196, 202.

[3] Although the caption of the Second Claim lists Ownit, the allegations are that Litton Loan Servicing "aided and abetted Merrill Lynch" and damages are sought only from Merrill Lynch.  First Amended Complaint, ¶¶ 205-06.

[4] Starting with the Common Law Fraud claim, the claims are misnumbered.  This court will refer to the claims in the order presented in the First Amended Complaint, with the Tenth Claim for Common Law Fraud, the Eleventh Claim for Constructive Fraud, the Twelfth Claim for Intentional Misrepresentation and Conspiracy, and the Thirteenth Claim for Quiet Title.

[5] The pleadings also reference a host of other possible theories of relief without separately setting them out as claims and references a litany of federal statutes as a basis for jurisdiction when no separately stated claims are premised upon those statutes.  *See* First Amended Complaint, ¶¶ 1, 19.  The only claims this court will consider are those separately alleged.

The First and Second Claims for aiding and abetting are the same as the Sixth Claim in the original Complaint.  The unjust enrichment claims and quiet title claims (Third and Thirteenth Claims) are the same as in the original Complaint (Tenth and Twelfth Claims).  The Fourth, Fifth and Sixth Claims allege civil claims based upon the federal RICO statute, replacing the state law RICO claim in the Seventh Claim of the original Complaint.  The breach of contract, fiduciary duty and duty of loyalty claims (Seventh, Eighth and Ninth Claims) rest upon the same concept as the breach of contract and breach of duty of good faith and fair dealing claims (Fourth and Fifth Claims) of the original Complaint.  Lastly, the fraud-based claims in the Tenth, Eleventh and Twelfth Claims mirror those in the First and Ninth Claims of the original Complaint.  At best, the First Amended Complaint is somewhat more specific as to which defendants are sued on which claims, but does not fundamentally change the underlying allegations and theories attacking the lending industry.

Dost asserts that he "wishes not to make this case about MERS or whether or not they have the powers to execute foreclosure or assign the authority in doing so."  First Amended Complaint, ¶ 171.  Despite that contention, Dost's pleading is rife with allegations that the chain of title is broken, the Deed of Trust was separated from the note, and the holder in due course cannot be ascertained.  *Id*, ¶¶ 45, 52, 111, 114, 167, 178, 181, 190.  Nevertheless, the basis of his claims is that the lending industry created and engaged in risky lending practices, encouraged the marketing of loans based on less than ideal loan conditions, then bundled their risky loans into risky investments, all in the name of corporate greed.  *Id*, ¶¶ 12-16.  He and other unwary and honest borrowers are now caught up as victims in a mess not of their own making because they

were "never warned or told that their loan type is likely to fail or likely to default regardless of the borrower's high credit score, intention, and valiant effort to pay the mortgage loan." *Id*, ¶ 16.

Dost seeks injunctive relief barring enforcement of their promissory note, prohibiting foreclosure, and compelling defendants to "renounce any interest in the subject property." *Id*, p. 57 (Prayer for Relief, ¶ A). In addition, he seeks compensatory damages of $3 million, punitive damages of $999 million, an additional $300,000 to be used to demolish his "residence by which he has been made prisoner to, while defending it," damages for lost income of $500,000, damages for future lost income in an undisclosed amount, attorney fees, and costs. *Id*, p. 58 (Prayer for Relief, ¶¶ B-G).

## FINDINGS

### I. Parties

#### A. Singular Plaintiff

As noted above, neither Michele Dost nor KWD have filed separate appearances since this court issued its March 28, 2011 Order regarding service (docket # 6). The First Amended Complaint does not name Michele Dost or KWD as plaintiffs in the caption, and the only reference to either of them in the remainder of the First Amended Complaint alleges that Michele Dost (along with Kenneth Dost) signed the May 12, 2005 promissory note secured by the Deed of Trust dated May 10, 2005. First Amended Complaint, ¶ 90. Therefore, this court assumes that they are no longer plaintiffs in this action.

///

///

///

### B. **Ownit (Seventh, Eighth and Ninth Claims)**

Although Ownit is not named in the caption, multiple paragraphs of the First Amended Complaint allege culpable conduct by Ownit, and each of Dost's 13 claims is alleged either against all defendants or expressly against Ownit. Ownit filed for bankruptcy in December 2006, was dissolved effective January 28, 2008, with all of its assets transferred to the Ownit Liquidating Trust. Complaint, ¶ 74 & Ownit Ex. G (docket # 2-5), p. 14; *see also* First Amended Complaint, ¶¶ 53, 94, 115, 146, 178, 191; Order (docket # 6). Thus, Ownit does not exist as an entity which Dost may sue, and any claim against the Ownit Liquidating Trust is prohibited under the terms of the Plan and Confirmation Order in Ownit's bankruptcy case. Complaint, Ownit Ex. G (docket # 2-5), pp. 14-16. Accordingly, the Seventh Claim for Breach of Contract, which is alleged exclusively against Ownit, should be dismissed.

The titles of the Eighth Claim for breach of the duty of loyalty and Ninth Claim for breach of fiduciary duty list Ownit as the only defendant, but the substance of the claims allege that Dallas breached duties owed to Dost.[6] Both claims appear to be premised upon Dost's contention that Dallas owed him a duty to "monitor" his loan (First Amended Complaint, ¶¶ 252, 254) and that he failed to do so, instead allowing his loan to end up in an investment trust (*id*, ¶ 249). This duty to "monitor" appears to be something Dost contends he was promised at the time he entered into his loan with Ownit in May 2005. *Id*, ¶¶ 59 ("Lenders instructed their broker networks to sell the credit repair features of the product, the promise to monitor and at reset, revisit and refinance that borrower to prime, or to refinance to another subprime fixed

---

[6] As discussed in more detail below, there is no Return of Service indicating that Dallas has been served and, in any event, there appears to be no basis on which to assert personal jurisdiction over him.

period."), 198.  The difficulty for Dost is that, premised as they are on something that took place in May 2005, these claims are barred by the applicable statute of limitations.  ORS 12.110. Furthermore, a lender has no fiduciary duty to its borrowers.  *Uptown Height Assoc's Ltd. P'ship v. Seafirst Corp.*, 320 Or 638, 650, 891 P2d 639, 646 (1995) (*en banc*) (parties' arms-length debtor-creditor relationship not fiduciary in nature).  Thus, Dallas, in his role as Ownit's CEO, had no duty of loyalty or fiduciary duty towards Dost.  Accordingly, the Eighth and Ninth Claims, exclusively alleged against Ownit and Dallas, also should be dismissed.

## II.  Dismissal of Claims against Individual Defendants

### A.  Failure to Serve

No Return of Service has been filed for Dallas.  FRCP 4(m) requires service of the complaint on a defendant within 120 days after it is filed and, if not timely served and after giving notice to the plaintiff, the court may "dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Given the lack of any evidence as to service on Dallas, he should be dismissed as a defendant.

### B.  Lack of Personal Jurisdiction

#### 1.  Legal Standard

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant.  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F3d 1163, 1168 (9th Cir 2006) (citation omitted).  If no evidentiary hearing is held, as here, a plaintiff can withstand a motion to dismiss by making a *prima facie* showing of jurisdictional facts which, if true, would support jurisdiction over the defendant.  *Id* (citation omitted).

If no applicable federal statute governing personal jurisdiction exists, the court applies the

law of the state in which the court sits. *Schwarzenegger v. Fred Martin Motor Co*., 374 F3d 797,

800 (9th Cir 2004). Oregon extends jurisdiction to the outer limits permitted by the state or

federal constitutions. ORCP 4L. Thus, the court turns to a federal due process analysis. *Mattel,*

*Inc. v. Greiner & Hausser GMBH*, 354 F3d 857, 863 (9th Cir 2003).

Federal due process requires that a nonresident defendant has minimum contacts with the

forum state such that the exercise of personal jurisdiction does not offend "traditional notions of

fair play and substantial justice." *International Shoe Co. v. Washington*, 326 US 310, 316

(1945). The constitutional due process test may be satisfied by a finding of either general or

specific jurisdiction. When a defendant has "substantial" or "continuous and systematic"

contacts with the forum state, general jurisdiction is proper even if the cause of action is

unrelated to the defendant's forum activities. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*,

223 F3d 1082, 1086 (9th Cir 2000). The standard is "fairly high" and requires contacts that

approximate physical presence. *Id.*

When general jurisdiction is inappropriate, the Ninth Circuit has recognized application

of a three-part test to determine whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or
> perform some act by which he purposefully avails himself of the privilege
> of conducting activities in the forum, thereby invoking the benefits and
> protections of its laws; (2) the claim must be one which arises out of or
> relates to the defendant's forum-related activities; and (3) the exercise of
> jurisdiction must comport with fair play and substantial justice, *i.e.* it must
> be reasonable.

*Schwarzenegger*, 374 F3d at 802 (internal quotation omitted).

9 - FINDINGS AND RECOMMENDATIONS

### 2. **Litton**

Litton seeks dismissal of the claims against him based on a lack of personal jurisdiction. Litton is a Texas resident and the President and CEO of Litton Loan Servicing, a residential mortgage loan servicer. First Amended Complaint, ¶ 24; Litton Decl. (docket # 26), ¶¶ 2-3. The pleadings recount Litton's 2007 testimony before a House Congressional Committee regarding the wave of defaults generated by lax underwriting standards, improper documentation, and fraud. First Amended Complaint, ¶ 173. Dost contends that Litton is responsible based on Litton Loan Servicing accepting loan pools of stated income loans. *Id*, ¶ 174. While Litton may be employed in the mortgage servicing industry and is sufficiently knowledgeable about that industry to offer congressional testimony, his breadth of knowledge is not a basis on which this court may exercise jurisdiction over him personally.

Dost has wholly failed to offer evidence that Litton has any connection whatsoever to Oregon sufficient to establish personal jurisdiction over him. Litton has never been to Oregon and has had no personal involvement in originating or servicing Dost's loan. Litton Decl. (docket # 26), ¶¶ 5-10. In short, the record reveals no basis on which to exercise personal jurisdiction over Litton, and his motion to dismiss all claims against him should be granted.[7]

### 3. **Dallas**

Even assuming that Dost has timely served Dallas, there appears to be no basis on which this court may exercise personal jurisdiction over him. Similar to the allegations against Litton, the allegations against Dallas focus on his role relative to a corporation involved in the mortgage

---

[7] Litton also contends that Dost has no standing to pursue the claims against him and that Dost has failed to state a claim. This court need not reach those issues with respect to Litton as it is abundantly clear that the court has no personal jurisdiction over him.

industry, namely his role as the CEO of Ownit.  According to the pleadings, Dallas and a group

of private investors purchased "Mindbox," an automated loan underwriting system in April 2003.

First Amended Complaint, ¶ 133.  In December 2003, Dallas and another group of private

investors, including BAC, took over Oakmont Mortgage and formed Ownit.  *Id*, ¶¶ 139, 193.

Ownit was later taken over by Merrill Lynch.  *Id*, ¶ 142.  Merrill Lynch then required Ownit to

loosen its lending standards.  *Id*, ¶ 143.  Dost contends that, as sole director of Ownit, Dallas

owed fiduciary duties to him, which Dallas and Ownit breached by engaging in "atypical

business practices and destructive market making."  *Id*, ¶ 157.  Dallas has "not placed a nickel

[of] his own funds into [Dost's] loan."  *Id*, ¶ 191.

The pleadings allege that Dallas lives in California, where Ownit was incorporated.

Nothing in the pleadings indicate that Dallas as any connection with Oregon.  As with Litton, this

lack of personal jurisdiction provides a basis for dismissing any claim alleged against Dallas.

### III.  Dismissal of Claims Against Corporate Defendants

Dismissal of the claims against Ownit, Litton and Dallas leaves only the claims against

the six remaining corporate defendants, namely NWTS, Litton Loan Servicing, Merrill Lynch,

Goldman Sachs, BAC, and MERS.  Several of these corporate defendants assert that Dost lacks

standing to sue them because no allegations link their conduct to harm to Dost.  Assuming Dost

skirts that hurdle, each of them also contends that Dost nonetheless fail to state a claim.  The

corporate defendants are correct on all counts.

///

///

///

11 - FINDINGS AND RECOMMENDATIONS

A. **Standing**

Several of the corporate defendants assert that Dost may not bring his claims against them because he fails to allege sufficient facts to establish standing.  Article III standing is a jurisdictional requirement that must be satisfied in all cases.  *Cole v. Oroville Union High Sch. Dist.*, 228 F3d 1092, 1097 (9th Cir 2000).  Standing requires that the plaintiff be able to establish that he suffered the invasion of a legally protected interest which is concrete, particularized, fairly traceable to the defendant's conduct, and redressable by a court decision.  *Lujan v. Defenders of Wildlife*, 504 US 555, 560-61 (1992); *Degelmann v. Advanced Med. Optics, Inc.*, 659 F3d 835 (9th Cir 2011).  The party invoking federal court jurisdiction bears the burden of establishing each element of standing.  *Lujan*, 504 US at 561.

Dost alleges that he entered into a fully-documented, fully underwritten loan and that he understood the terms of the loan.  Complaint, ¶¶ 9; First Amended Complaint, ¶ 11.  The crux of his complaint seems to be that he was (and multiple other unsuspecting borrowers were) never warned "that they would face payment shock and/or significant increase in monthly mortgage payments or that the initial minimum payments would increase or would not apply for the life of the loan" or "that they would be unable to refinance their loans to a fixed reasonable rate mortgage."  First Amended Complaint, ¶ 77.  In or about December 2006, the original lender on Dost's loan, Ownit, filed for bankruptcy protection.  Complaint, ¶ 72.  Due to the combination of the freezing of credit markets and a loss of income resulting from the economic downturn, Dost defaulted on his loan in or about October 2007.  *Id*, ¶¶ 170-75.

Litton Loan Servicing serviced Dost's loan and made several attempts to work with Dost to avoid foreclosure on the property.  *Id*, ¶¶ 174-76; First Amended Complaint, ¶ 28 .

Ultimately, however, Dost was served with a foreclosure notice in June 2008.  Complaint, ¶ 175.

Although Dost makes a conclusory allegation that Litton Loan Servicing has "extraordinary

powers of control that far exceeds that of a loan servicer" (First Amended Complaint, ¶ 102),

nowhere does he assert any injury resulting from the servicing of his loan or from these allegedly

extraordinary powers.  Instead, the thrust of Dost's pleading is that defendants conspired to ruin

the national economy and his personal finances by originating loans that were designed to fail.

He alleges that, beginning in September 2005 and continuing for the next several years, Merrill

Lynch and Ownit led the charge for the mortgage industry to loosen lending standards and

securitize residential mortgage loans, resulting in a high rate of defaults and pulling the country

into a financial crisis that rippled through the construction industry, ultimately causing his

business to fail which put him in default on his May 2005 loan.  Even assuming the accuracy of

these allegations, however, does not save Dost's claim against Litton Loan Servicing.  Nothing in

the pleadings alleges any injury to Dost that is "fairly traceable" to Litton Loan Servicing's

alleged conduct in acting as the servicer on Dost's loan.  Accordingly, all claims against Litton

Loan Servicing should be dismissed for lack of standing.

      For like reasons, the claims against Goldman Sachs also should be dismissed.  Between

December 2007 and September 2011,[8] Goldman Sachs Group, Inc., was the ultimate corporate

parent of Litton Loan Servicing, a limited partnership.  First Amended Complaint, ¶ 23; Litton

Loan Servicing LP's Corporate Disclosure Statement (docket # 28).  The only allegations in the

amended pleadings concerning Goldman Sachs are that:  (1) from December 2007 until

---

[8] As of September 1, 2011, Litton Loan Servicing's general partner is Ocwen Capital Management, LLC, and its limited partner is Ocwen Loan Servicing, LLC.  Litton Loan Servicing LP's Amended Corporate Disclosure Statement (docket # 116).

September 2011, it had a partnership/ownership interest in Litton Loan Servicing which serviced Dost's loan and a large number of risky loans (First Amended Complaint, ¶¶ 23, 158-59, 162); (2) it makes substantial campaign contributions and lobbying expenditures (*id*, ¶ 186); and (3) it divested itself of any interest in Litton Loan Servicing in 2011. *Id*, ¶¶ 23, 159, 162. Nothing about these allegations confers standing on Dost to pursue a claim against Goldman Sachs.

The remaining defendants do not explicitly characterize their argument as one of standing, but do argue that they are unconnected to Dost and his loan, except in peripheral ways which do not give rise to a claim against them.

NWTS is a full service trustee company providing default services to mortgage lenders in the Pacific Northwest. In or about June 2008, HSBC Bank appointed NWTS as the successor trustee of the Deed of Trust. *Id*, ¶ 31. NWTS then commenced a non-judicial foreclosure on Dost's property. *Id*, ¶ 111. NWTS does not originate loans and is not a bank, lending institution, or loan servicer. Beyond the allegation that NWTS initiated the non-judicial foreclosure on Dost's property and initiated foreclosures on other properties that NWTS "knew were fraudulent" (*id*, ¶ 275), the allegations give no indication that NWTS took any action with respect to Dost. At best, it initiated a foreclosure that Dost contests. The basis of the "fraud" alleged by Dost is that the assignments on which NWTS relied to initiate foreclosures were fraudulent. *Id*, ¶¶ 110-11, 274-75. Dost does not allege that NWTS prepared or executed those assignments, only that it relied on them, "knowing" they were fraudulent to initiate a foreclosure on his property

Merrill Lynch and BAC also argue that they are unconnected to Dost or his loan, other than that Merrill Lynch is allegedly an investor under the trust in which Dost's loan is currently held. Merrill Lynch and BAC did not originate Dost's loan and are not the beneficiary, servicer,

or current lender on the loan.  Dost alleges that his loan is currently held in the Ownit Mortgage

Backed Mortgage Loan Trust 2005-4, an investment trust owned by Merrill Lynch.  *Id*, ¶¶ 51, 53,

116, 178.  Apart from that, Dost contends that Merrill Lynch encouraged atypical and risky

business practices, namely the loosening of residential loan standards, which ultimately led loan

originators such as Ownit into bankruptcy.  *Id*, ¶¶ 79-82, 146.  Merrill Lynch and BAC succinctly

summarize Dost's complaint as alleging that they are liable to *him* because they provided loans to

other borrowers that he deems unworthy of the loans.

Finally, MERS did not originate or service Dost's loan.  Instead, its only role in Dost's

mortgage loan transaction was to serve as the beneficiary of record on Dost's Deed of Trust, as

the nominee for Dost's lender.

The connection between defendants' alleged actions and Dost's injury is simply too

indirect to support any claim by him on the theories he espouses.  Subprime lending and

securitizing mortgages are inherently legal activities.  If defendants committed any criminal

violations, then federal or state prosecutors, not Dost, must bring the appropriate criminal

charges.  To the extent that any misconduct occurred when defendants sold mortgages to create

mortgage-backed securities, the buyers of these securities, not Dost, can bring their own causes

of action.  If defendants eventually conduct a successful nonjudicial foreclosure against Dost's

property in violation of any provision of the Oregon Trust Deed Act, ORS 86.705-795, then he

may be able to allege a claim.  What Dost cannot do is act as a private attorney general to hold

defendants responsible for causing a national financial crisis.  *See City of Cleveland v.*

*Ameriquest Mort. Sec., Inc.*, 615 F3d 496, 506 (6th Cir 2010), *cert. denied*, 131 S Ct 1685 (2011)

(dismissing a public nuisance claim against mortgage lenders that had engaged in subprime

15 - FINDINGS AND RECOMMENDATIONS

lending because the city's alleged damages were too remote from the defendants' alleged misconduct).  Therefore, all claims against the remaining corporate defendants should be dismissed for lack of standing.

Assuming for the purposes of these motions that Dost managed to satisfy this court that he has standing to pursue these claims, they nevertheless fail for failure to state a claim, as discussed next.

### B.  Failure to State a Claim

#### 1.  Legal Standard

In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  FRCP 8(a)(2).  This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 US 662, ___, 129 S Ct 1937, 1949 (May 18, 2009), citing *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*, quoting *Twombly*, 550 US at 555.  In order to survive a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*, quoting *Twombly*, 550 US at 570.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party.  *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995).  In addition to the allegations of the complaint, the court may also consider documents whose authenticity no party questions

which are attached to, or incorporated by reference into, the complaint, as well as matters capable

of judicial notice.  *Knievel v. ESPN*, 393 F3d 1068, 1076 (9ᵗʰ Cir 2005).  The court need not

accept as true allegations in the complaint that contradict these sources.  *Lazy Y Ranch, Ltd., v.*

*Behrens*, 546 F3d 580, 588 (9ᵗʰ Cir 2008).

### 2.  Aiding and Abetting and Conspiracy (First and Second Claims)

Dost's First and Second Claims rest on theories of civil conspiracy and aiding and

abetting.  The First Claim alleges that Merrill Lynch aided and abetted "William Dallas to loosen

subprime loan underwriting standards for purposes of inducing more loan borrowers thereby

increasing production levels, without concern to loan performance" and that "Ownit's subsequent

collapse was the direct result of Merrill Lynch's aiding and abetting."  First Amended Complaint,

¶ 197.  The Second Claim alleges that Litton Loan and Merrill Lynch aided and abetted Ownit

and Merrill Lynch in "the acceptance of mortgage loans that Litton [Loan Servicing] knew were

fraudulent."  *Id*, ¶ 204.  These claims seem to follow the logic that Ownit (spurred on by Merrill

Lynch) funded loans without regard to the likelihood that the borrowers would be able to repay

them (including loans where defendants knew the borrowers fraudulently misrepresented their

incomes), resulted in a high rate of default which eventually led to an economic downturn, which

in turn led to a loss of business for Dost and his company, and ultimately resulted in Dost not

being able to pay his mortgage.

Despite Dost's care in setting these allegations out as separate claims, they are not

separate torts for which damages may be recovered.  With respect to Dost's aiding and abetting

theory, Oregon recognizes "'[t]he admitted rule of law . . . that all who aid, command, advise, or

countenance the commission of a tort by another, or who approve of it after it is done, if done for

17 - FINDINGS AND RECOMMENDATIONS

their benefit, are liable in the same manner as they would be if they had done the same tort with their own hands.'" *Perkins v. McCullough*, 36 Or 146, 149, 59 P 182 (1899) (internal quote marks and citation omitted).  Along that same line, a "civil conspiracy consists of (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as a result of the overt act or acts."  *Morasch v. Hood*, 232 Or App 392, 402, 222 P2d 1125, 1131-32 (2009) (citation omitted).  However, "civil conspiracy is not, itself, a separate tort for which damages may be recovered; rather it is a way in which a person may become jointly liable for another's tortious conduct."  *Id* at 402, 222 P2d at 1132 (citations, internal quotation marks and brackets omitted).  If there is no independent tort, then joint liability under an aiding and abetting or civil conspiracy theory will not lie.  *Id* at 402-03, 222 P2d at 1132 ("Given . . . our conclusion that the trial court properly disposed of plaintiffs' fraud claim in favor of defendants due to plaintiffs' failure to present proper evidence of damages, it follows that the court also properly granted judgment notwithstanding the verdict in favor of defendants relating to the conspiracy allegations.").  As discussed below, each of Dost's separately pleaded tort claims is subject to dismissal for various reasons.  Accordingly, to the degree he attempts to allege claims for aiding and abetting and civil conspiracy in the First and Second Claims, those claims should likewise be dismissed.

### 3.  <u>Unjust Enrichment (Third Claim)</u>

In the Third Claim, Dost implies that he suffered damages when he was charged a higher interest rate and fees for his loan and when defendants received "[r]ebates, kickbacks, [and] profits (including but not limited to from resale of mortgages and notes using [Dost]'s identity, credit score and reputation without consent, right justification or excuse as part of an illegal

enterprise scheme) . . . ."  First Amended Complaint, ¶ 209.  A claim for unjust enrichment

requires the plaintiff to establish that he conferred a benefit on the defendant and that the

defendant knowingly, and unjustly, retained the benefit.  *Summer Oaks Ltd. P'ship v. McGinley*,

183 Or App 645, 654, 55 P3d 1100, 1104 (2002).  Dost's unjust enrichment claim suffers from

two flaws.

First, the bulk of Dost's allegations are that defendants wrongfully profited not from

loans made to him, but to scores of other unsuspecting residential borrowers or from monies paid

to bail out failing lending institutions.  Where the alleged benefit was conferred by someone

other than the plaintiff, a claim for unjust enrichment fails.  *See* Memorandum in Support of

Defendant Litton Loan Servicing LP's Motion to Dismiss (docket # 30), p. 22 (citing cases

involving receipt of Troubled Asset Relief Program ("TARP") funds).

Second, assuming that Dost's allegations of a "higher interest rate and fees" paid by him

is sufficient to navigate that barrier, his claim nonetheless fails.  It is grounded on the existence

of a "valid legally enforceable contract" which precludes a claim like unjust enrichment which is

grounded on quasi contract.  *Prestige Homes Real Estate Co. v. Hanson*, 151 Or App 756, 762,

951 P2d 193, 195 (1997) ("ultimately there cannot be a valid legally enforceable contract and an

implied contract covering the same services").  Accordingly, the Third Claim should be

dismissed.

### 4.  RICO Violations, RICO Conspiracy, and RICO Extortion

In his original complaint, Dost alleged claims under the Oregon RICO statute.  He has

now alleged RICO claims exclusively under the federal Racketeering Influenced and Corrupt

Organizations ("RICO") statute, 18 USC §§ 1961-68.  The federal RICO statute was enacted "to

19 - FINDINGS AND RECOMMENDATIONS

remove the profit from organized crime by separating the racketeer from his dishonest gains."

*Russello v. United States*, 464 US 16, 28 (1983).  However, as explained below, each of Dost's

RICO claims fails to state a claim.

### a.  RICO Violations (Fourth Claim) and Conspiracy (Fifth Claim)

Dost's Fourth Claim alleges a claim under 18 USC § 1964(c), which provides a civil

remedy for violations of the federal RICO statute, 18 USC § 1962.[9]  In particular, Dost alleges a

violation of 18 USC § 1962(c).  In the Fifth Claim, Dost alleges a companion claim that

defendants conspired to violate 18 USC § 1962(c), in violation of 18 USC § 1962(d).

To state a civil claim under 18 USC § 1962(c), Dost must establish:  "'(1) conduct (2) of

an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts')

---

[9]  18 USC § 1962 prohibits the following:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 USC § 1962.

(5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F3d 353, 360 (9th Cir 2005), quoting *Grimmett v. Brown*, 75 F3d 506, 510 (9th Cir 1996); *see also Odom v. Microsoft Corp.*, 486 F3d 541, 547 (9th Cir 2007).

Where, as in this case, there are multiple defendants, a RICO plaintiff "must allege that each individual defendant engaged in a pattern of racketeering activity." *Phillips v. Lithia Motors, Inc.*, 2006 WL 1113608, at *10 (D Or April 27, 2006) (citations omitted). To establish a "pattern of racketeering activity," a plaintiff must allege facts that show the commission of two or more acts of racketeering – "predicate acts," as defined by 18 USC § 1961(1) – that occurred within a period of ten years. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F3d 969, 972 (9th Cir 2008).

Dost lists six criminal statutes which he alleges "Defendants and the other Conspirators" violated. First Amended Complaint, ¶ 218. Included are alleged violations of 18 USC § 1341 (mail fraud), § 1343 (wire fraud), § 1344 (bank fraud), § 1951 (interference with commerce by threats or violence, a.k.a. robbery or extortion), § 1956 (money laundering), and § 1957 (engaging in monetary transactions in property derived from unlawful activity). Dost makes no effort to identify which defendant or defendants violated particular provisions, but instead lumps all the defendants together. This is insufficient under FRCP 9(b) to plead a RICO predicate act grounded in fraud. *See Swartz v. KPMG LLP*, 476 F3d 756, 764-65 (9th Cir 2007).

Dost also fails to identify how any of the conduct otherwise described in his pleading constitutes "predicate acts" due to a violation of any of the underlying statutes. As far as can be gleaned from the pleadings, the relationship between Dost and each of the remaining corporate defendants flows from their participation in servicing Dost's loan (Litton Loan Servicing),

21 - FINDINGS AND RECOMMENDATIONS

acquiring an ownership interest in the entity that serviced Dost's loan (Goldman Sachs), acquiring an ownership interest in the investment trust that currently holds Dost's loan (Merrill Lynch and BAC), acting as the beneficiary of record on Dost's Deed of Trust and preparing and recording an assignment of those rights to another entity (MERS), and initiating a non-judicial foreclosure based on recorded documents (NWTS). Dost's allegations are woefully inadequate to support a claim based on violation of any of the other statutorily-defined predicate acts he mentions.

The predicate acts of mail and wire fraud require a showing that the defendant (1) engaged in a scheme or artifice to defraud; (2) used or caused the use of the mails or wires in furtherance of the scheme; and (3) had specific intent to defraud. *United States v. Inzunza*, 638 F3d 1006, 1017 (9th Cir 2011), *petition for cert. filed*, 80 BNA USLW 3058 (July 11, 2011) (No. 11-67). Other than mentioning that Ownit "normally and regularly wired the loan proceeds on loans it was funding to designated real estate settlement companies" (First Amended Complaint, ¶ 27) and more generally that "[a]ll funds to finance Plaintiffs' loans in this had those funds wired by the respective 'funder' using the wires and other instrumentalities of interstate commerce (*id*, ¶ 164), the pleadings do not mention the use of mails or wires by any of the remaining corporate defendants, nor does it plead any facts suggesting that they engaged in a "scheme or artifice to defraud" or any particulars about the alleged fraud. These allegations are insufficient to state a claim based on the predicate acts of mail or wire fraud.

The financial institution fraud statute, 18 USC § 1344, prohibits executing or attempting to execute a "scheme or artifice" to defraud a "financial institution" or obtaining funds or property "owned by, or under the custody or control of, a financial institution," by means of

fraud.  18 USC § 1344.  In contrast to that statute, Dost alleges that defendants (including several

which may themselves be "financial institutions") defrauded *him* and *other borrowers* – and

ultimately defrauded American taxpayers – but not other financial institutions. First Amended

Complaint, ¶¶ 15 ("it is outright robbery and theft being perpetrated against innocent and

unsuspecting victims: 1) the people who signed up for these loans and 2) the American

taxpayer."), 18.

An act of "extortion" requires the "obtaining of property from another, with his consent,

induced by wrongful use of actual or threatened force, violence, or fear, or under color of official

right."  18 USC § 1951(b)(2).[10]  Dost alleges that he and his wife "lost nearly all their savings as

a result of the racketeering activities" and that other unwary borrowers have "lost millions of

dollars in the fraudulent schemes Defendants created, organized, serviced, and continue to

operate and run."  First Amended Complaint, ¶¶ 220, 238.  Even assuming that the "threat of

imminent foreclosure" (*id*, ¶ 239) constitutes an action taken "under color of official right," Dost

does not allege what property defendants obtained from him, much less that they did so "with his

consent."  Instead, he alleges an economic downturn driven by the collapse of the mortgage

industry as a result of lax underwriting standards, which ultimately rippled into the construction

industry and caused a precipitous decline in the business generated by his now defunct

architectural firm.  Threats of foreclosure do not extortion make.  "[T]hose claims [that

defendants threatened foreclosure] are nothing more than conduct undertaken in the ordinary

---

[10]  Although Dost repeatedly mentions "robbery" in his pleadings, "robbery" requires the "unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property," contemplates the taking of property from or in the presence of a person through the use of actual or threatened physical force.  18 USC 1951(b)(1) (defining "robbery").  It has no application in this context.

course of business or litigation and cannot be fairly characterized as extortion that is

independently wrongful under RICO . . . ." *Book v. Mortg. Elec. Registration Sys.*, 608

F Supp2d 277, 282 (D Conn 2009). Likewise, Dost's other allegations concerning the various

assignments of interests in his deed of trust, acquisitions of interests in entities having servicing

rights to his loan, or acquisition of interests in the trust holding his loan, reflect no extortionate

activity on the part of any defendant.

       For similar reasons, Dost's allegations are insufficient to support his contention that

defendants engaged in the predicate acts of money laundering or monetary transactions in

property derived from unlawful activity under 18 USC § 1956 or § 1957. Both of those statutes

require proof that the defendant engaged in monetary transactions involving criminal property or

the proceeds of illegal activities. Dost variously characterizes the profits made by defendants as

"illegal" and the subprime loans he and other borrowers took out as "illegal" and "fraudulent,"

apparently based on his contention that borrowers regularly inflated their income levels in "as

stated" loans. The gravamen of his allegations, though, is that defendants[11] loosened lending

standards and funded loans to borrowers who could ill afford to pay those loans back, then

profited from reselling those loans. First Amended Complaint, ¶¶ 12, 69. While these

allegations seek to indict defendants, they hint at nothing more than that defendants funded and

resold risky loans. Though Dost makes a good case that the mortgage industry engaged in

economically unsustainable transactions between 2005 and 2007, he has identified nothing

unlawful about those financial transactions. In sum, the First Amended Complaint is bereft of

---

    [11] Not every defendant is alleged to have funded or resold loans and, for that additional reason, Dost has failed to allege that those defendants engage in any financial transaction at all, much less one that involved criminal property or the proceeds of illegal activities.

allegations that will support the conclusion that any defendant engaged in RICO predicate acts premised upon either 18 USC § 1956 or § 1957.[12]  Because Dost has failed to adequately plead a violation of 18 USC § 1962(c), his Fourth Claim should be dismissed.

A finding that Dost has failed to plead a RICO claim under 18 USC § 1962(c) necessitates dismissal of the Fifth Claim fails as well.  "'Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.'" *Sanford v. MemberWorks, Inc.*, 625 F3d 550, 559 (9th Cir 2010), quoting *Howard v. Am. Online, Inc.*, 208 F3d 741, 751 (9th Cir 2000).  Accordingly, the Fifth Claim should be dismissed.

### b. RICO Extortion (Sixth Claim)

Dost's Sixth Claim is titled as a claim for "RICO Extortion."  However, the substantive allegations of that claim merely restate and reallege the violations of 18 USC § 1962(c) and (d) set forth in the Fourth and Fifth Claims.  For the same reasons as those claims should be dismissed, the Sixth Claim should also be dismissed.

"Extortion," as that term is defined in 18 USC § 1951(b), is one of many possible "racketeering activit[ies]" that may serve as a predicate act for one of the four types of RICO violations set out in 18 USC § 1962.  *See* 18 USC § 1961(1); *see also Rothman v. Vedder Park Mgmt.*, 912 F2d 315, 317 (9th Cir 1990) (dismissal of RICO claim for failure to allege sufficient predicate acts of extortion).  To the degree Dost is attempting to allege a separate claim for "RICO Extortion," the pleadings do not identify the subsection on which he premises such a RICO claim and, in any event, the RICO extortion statute is a criminal statute that does not

---

[12]  Given Dost's failure to allege sufficient acts to constitute predicate acts, it is unnecessary to address defendants' alternative arguments that he fails to sufficiently allege the "enterprise" or causation.

provide a private right of action.  *See Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F3d

402, 409 (8th Cir 1999); *see also Azeltine v. Bank of Am.*, 2010 WL 6511710, at *8 (D Ariz.,

December 14, 2010), *Report and Recommendation adopted*, 2011 WL 1465462 (D Ariz.,

April 18, 2011) (following *Wisdom*; citing other cases).  Accordingly, the Sixth Claim for RICO

Extortion should also be dismissed.

### 5.  Common Law and Constructive Fraud (Tenth and Eleventh Claims)

In the Tenth and Eleventh Claims, Dost alleges that defendants breached unspecified

"statutory and common law duties, including fiduciary duties" by failing to disclose "payments

made to persons or entities attributable to [Dost's] loans" and an "agreement whereby illegal and

improper 'kickbacks,' or 'referral fees,' were to be paid and split between OWNIT and US Bank

and/or Spartan Mortgage . . . ."  First Amended Complaint, ¶¶ 257, 263-64.  The difficulty with

these claims is the lack of a fiduciary relationship between Dost and any of the remaining

corporate defendants.

Generally, there is no liability for fraud that may be premised on nondisclosure even if

material facts are known to one party and not the other, "unless there is some fiduciary or

confidential relationship giving rise to a duty to disclose."  *Pension Trust for Operating  Eng'rs

v. Fed. Ins. Co.*, 307 F3d 944, 954 (9th Cir 2002); *see also Gebrayel v. Transamerica Title Ins.

Co.*, 132 Or App 271, 281, 888 P2d 83, 89 (1995) ("[f]or non-disclosure to form the basis of a

fraud claim, defendant must be under a duty to disclose.").  Dost alleges no facts which would

support a finding that he enjoyed a confidential or fiduciary relationship with any of the corporate

defendants.  Instead, Ownit funded Dost's loan, and the other corporate defendants acted on

behalf of the lender or entity standing in its shoes in servicing the loan and ultimately  preparing

to foreclose as a result of a default on the loan by Dost.  Nothing indicates that Dost's relationship (such as he has) with these corporate defendants was anything other than an arms-length commercial transaction, giving rise to no fiduciary duties and therefore no duty to disclose.  Accordingly, the Tenth and Eleventh Claims should be dismissed for failure to state a claim.

### 6.  <u>Intentional Misrepresentation and Conspiracy (Twelfth Claim)</u>

In his Twelfth Claim for Intentional Misrepresentation and Conspiracy, Dost alleges that Ownit's "origination of Plaintiff's mortgage contained misrepresentations after the fact that it could have cured had it taken measures."  First Amended Complaint, ¶ 268.  This assertion seems to be linked to Dost's contention that defendants "misrepresented the true terms of the loans [including the] risks and dangers of AMRs with interest payment only, negative amortization features and balloon payments" and made "oral rep[resentation]s and warranties, pursuant to refinancing at reset."  *Id*, ¶¶ 76, 78.  Rather than maintain tight controls on lending standards and pool Dost's loan together with lower-risk loans, Ownit kept Dost's loan in a portfolio which it then riddled with high risk loans.  *Id*.  In particular, Dost contends that Litton Loan Servicing and Ownit "worked in enterprise" to fund fraudulent stated income loans.  *Id*, ¶ 269.  He then alleges that Merrill Lynch "aided and abetted the fraud" by structuring SEC offering documents to "conceal the fraud that surrounds plaintiff, his loan, access of information and directions to action," whatever that means.  *Id*, ¶ 270.  He also asserts that NWTS relied on "fraudulent" documents to institute foreclosures and therefore should investigated and charged. *Id*, ¶ 275.

To determine if the elements of fraud have been sufficiently alleged, the court looks to

state law. *Kearns v. Ford Motor Co.*, 567 F3d 1120, 1126 (9th Cir 2009). To state a claim for

fraud/misrepresentation under Oregon law, Dost must allege with particularity:

> (1) a misrepresentation; (2) its falsity; (3) its materiality; (4) the speaker's
> knowledge of its falsity or ignorance of its truth; (5) his intent that it
> should be acted on by the person and in the manner reasonably
> contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on
> its truth; (8) his right to rely thereon; (9) and his consequent and proximate
> injury.

*Estate of Schwarz v. Philip Morris Inc.*, 206 Or App 20, 38-39, 135 P3d 409 (2006), *aff'd* 348 Or

442, 235 P3d 668 (2010), *adhered to on recon.*, 349 Or 521, 246 P3d 479 (2010) (internal

quotation omitted); *see also Riley Hill Gen. Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 405,

737 P2d 595, 604 (1987) (*en banc*).

Despite listing these elements of a fraud claim (First Amended Complaint, ¶ 267), Dost

wholly fails to identify which defendant made a misrepresentation and, perhaps more

importantly, fails to allege facts showing that he had a right to and in fact did rely on any

misrepresentation and how he was damaged thereby. Other than baldly asserting that defendants

"misrepresented the true terms of the loans" (*id*, ¶ 76), he does not allege a single false statement

by any defendant to him on which he relied to his detriment. Instead, referencing

misrepresentations *after* his loan origination (*id*, ¶ 268), he alleges false statements made by

other borrowers to loan originators seeking loans under the loosened lending standards. Again,

his premise is that his loan was pooled into an investment vehicle with stated income (at best

risky, at worst both fraudulent and risky) loans, that those investment vehicles eventually

imploded due to the high level of defaults, and that this led to the economic meltdown of 2007,

which in turn led to a default on his own loan.  His alleged injury of defaulting on his loan when

his business went under in 2007 does not arise from any allegedly false statement made to him

when he obtained his loan.  His allegations are wholly insufficient to state a claim for fraud, both

because they lack sufficient particularity under FRCP 9(b) and because they fail to adequately

allege any of the elements necessary to support a misrepresentation claim under Oregon law.

Because the underlying fraud claim fails, his conspiracy theory also fails for the reasons

discussed above.

### 7.  Quiet Title (Thirteenth Claim)

In his Thirteenth Claim to Quiet Title, Dost alleges that "[d]efendants by fraud received

an iniquitous deed of trust to secure debt to the property for a loan that [Dost] should have been

given or been allowed to take" and that, as a result, defendants "have created an illegal cloud on

title."  First Amended Complaint, ¶¶ 281-82.  Dost seeks to have the court "invalidate the deed of

trust on the property."  *Id*, ¶ 282.  Elsewhere in the pleadings, Dost seems to argue that his loan

has already been paid, perhaps multiple times.  *See id*, ¶¶ 15, 18, 166, 183-85, 211.  Dost's quiet

title claim fails on two grounds.

First, Dost's conclusory assertions that his loan has been paid are an insufficient basis on

which to premise his quiet title claim.  "The Complaint . . . merely asserts, without any actual

assertion of fact, that the debt has been paid from one or more sources.  The allegation that

nobody is owed any money based on Plaintiff's promissory note and deed of trust is a conclusory

allegation which the court is not required to accept."  *In re McCoy*, 446 BR 453, 457 (D Or 2011)

(dismissing claim for quiet title).

29 - FINDINGS AND RECOMMENDATIONS

Second, since Dost still owns the property, he cannot state a claim to quiet title.  *Tabb v. One West Bank, FSB*, Case No. 3:10-cv-855-ST, 2011 WL 4448752, at *9 (D Or Aug. 26, 2011), *Findings and Recommendation adopted* (docket # 153) (not yet reported in Westlaw) (Nov. 21, 2011) (plaintiffs "cannot state a claim to quiet title because it is undisputed that they own the real property.").  As in *Tabb*, the "issue is not over title, but whether the Deed of Trust is a lien that can be foreclosed against plaintiffs' property [and] it appears that instead of seeking to quiet title, plaintiffs seek to establish that none of the defendants should be allowed to foreclose on plaintiffs' real property nonjudicially."  *Id*.

For both of these reasons, the Thirteenth Claim to quiet title should be dismissed.

**IV**.  **Whether to Allow Further Amendment**

Following the filing of five of the six pending motions to dismiss, this court granted Dost's request for leave to amend his pleadings.  He then filed the First Amended Complaint (docket # 100) which suffers from the same flaws previously identified by defendants with respect to the original Complaint.  This court can discern no amendments which would cure those defects.  Because there is no set of facts that Dost can plead to support a claim against any of the defendants, each of his claims should be dismissed with prejudice and without further leave to amend.

///

///

///

///

///

30 - FINDINGS AND RECOMMENDATIONS

## RECOMMENDATIONS

For the reasons set forth above, defendants' motions to dismiss (dockets # 10, # 22, # 24, # 29, # 33 & # 107) should be GRANTED, defendant Dallas should be DISMISSED for lack of prosecution and lack of personal jurisdiction, and all claims against defendant Ownit should be DISMISSED.  Accordingly, a judgment should be entered dismissing this case with prejudice.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due January 9, 2012.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

This Order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED this 21st day of December, 2011.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge